JUSTICE TRIEWEILER
dissents.
¶105 I concur with all of Justice Nelson’s dissent except ¶¶ 52-54 which discuss balancing the constitutional right of privacy with the constitutional right to a clean and healthful environment.
¶106 I do not believe that the right to a clean and healthful environment was implicated by the record in this case. Neither was it raised as an issue raised in the District Court. Nor did it serve as any basis for the District Court’s opinion. Finally, I doubt that I would achieve the same balance if it was an issue.
¶107 The State of Montana interjected the environmental mandate of Article IX, Sec. 1(1), of the Montana Constitution for the first time on appeal. It was thrown into the waters, so to speak, as bait in an effort to seduce justices who might otherwise more carefully scrutinize warrantless searches of a private vehicle. Unfortunately, the bait was swallowed by the majority-hook, line and sinker.
¶108 The majority cites to Article IX, Sec. 1(1), in ¶ 22 and then infer that the appointment of game wardens for the protection of fish was done to implement the Constitution’s environmental mandate. However, there is no basis for that conclusion. First, the statute referred to by the majority has been in effect in one form or another since 1921, more than 50 years before the constitutional right to a clean and healthful environment was enacted. Second, there is no reference to any legislative history which links the appointment of game wardens to the requirement that ‘each person shall maintain and improve a clean and healthful environment.’ Third, the fish which were caught in this case may or may not even have been part of Montana’s natural environment.
¶109 Boyer was charged with catching more than his limit of Sauger or Walleye. If Walleye, ‘the species is not native to Montana and there is no reliable information regarding the time and place of the first *306 introduction of Walleye into Montana.’[6] Furthermore, there are many serious sportsmen who consider the introduction of Walleye detrimental to native fish species and who believe their total eradication would do nothing to detract from Montana’s environment. In other words, some would dispute Justice Leaphart’s reference to them as among Montana’s ‘treasured wildlife.’ While I don’t personally have the background to take a position on that issue, I simply point it out to demonstrate that something as precious as the constitutional right to a clean and healthful environment shouldn’t be cavalierly interjected into a case when something as precious as the constitutional right to privacy hangs in the balance unless there is some factual basis for doing so. Here there is none.
¶110 If this case involved fish habitat, it would be a different matter. However, it merely involves violation of an arbitrary limit set on how many Walleye (a non-native species) can be taken from the river. To suggest that the constitutional right to a clean and healthful environment is implicated without the benefit of any district court argument or factual record will ultimately denigrate respect for this court’s future enforcement of the vital protection provided in our Constitution by Article IX.
¶111 For these reasons, I concur with all of Justice Nelson’s dissent to the majority opinion other than his discussion which balances the right to a clean and healthful environment with the right of privacy.

 Dr. Peter Colby and Chris Hunter, Environmental Assessment of the Introduction of Walleye Beyond Their Current Rage in Montana, (1989) p 5.